# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **GOOGLE LLC and** § <br> **GOOGLE INDIA PRIVATE LIMITED,** § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> **HARSHIT ROY,** § <br> § <br> Defendant. § | <br><br><br><br> Civil Action No. 1:24-cv-1425 <br><br><br><br> JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiffs Google LLC and Google India Private Limited (jointly, "Plaintiff" or "Google") file this Original Complaint ("Complaint") against Harshit Roy ("Roy"), and allege as follows:

## INTRODUCTION

1. This dispute involves the malicious leaking of Google trade secrets by a former employee who has posted and threatened to continue to post Google's highly-sensitive product information, in flagrant disregard of his legal obligations to protect such information.

2. In late August 2024, illicit images of Google's trade secrets—non-public internal files describing, among other things, specifications for Google's proprietary hardware and software for its Pixel devices—appeared on Roy's public-facing social media profiles. Roy wrongfully posted pictures of such highly-sensitive information, which he had taken using his phone before leaving his employment with Google. He also threatened additional disclosures, saying, in response to his publication of numerous photographs, "Let me know if need more info [sic]." He touted his dominion over the trade secrets he stole, saying, "I decide the time @GoogleIndia @Google." Roy showed complete disdain for Google's trade secrets and his obligations to protect such information, saying "I need to take unethical means to get what I am

entitled to" and "Google [sic] Don't expect me to adhere to any confidentiality agreement. . . . remember that empires fall and so will you."

3. Roy knew he should not be publicizing this information. Months prior to these posts, while still in India, Google sent Roy multiple letters addressing these earlier leaks and clearly advising him that he was not permitted to retain or disclose Google's confidential information. Google again contacted Roy in late August 2024 to demand that he take down his social media posts and stop sharing Google's confidential information. Roy thereafter went quiet for weeks.

4. But Roy was apparently unperturbed by Google's attempts to resolve this without judicial intervention. Just last month, Roy published additional images of Google trade secrets. His recent online activity indicated that Roy had left India and moved to the United States. Alarmed by Roy's continuing misconduct and his unwillingness to cooperate with Google's demand to take down his publications, Google just recently tracked him down in Austin, Texas after weeks of effort and considerable expense. Because he now resides in Texas, has committed trade secret misappropriation here, and threatened further misappropriation, he is subject to the federal Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA"). Google promptly served him on the campus of the University of Texas at Austin ("UT Austin") with a November 14, 2024 letter seeking his cooperation for an out-of-court resolution.

5. Roy ignored Google's efforts at resolution, thereby forcing Google to seek emergency relief from this Court.

## THE PARTIES

6. Plaintiff Google LLC is a Delaware limited liability company headquartered in Mountain View, CA 94043. Google LLC and/or Google India Private Limited is the licensee of

the trade secrets that, upon information and belief, are in Roy's possession, including the trade secrets that Roy published on X.com ("X") and Linkedin.com ("LinkedIn").

7. Plaintiff Google India Private Limited is a private limited company with a registered address of Bengaluru, Karnataka, 560016 India.

8. Harshit Roy is a Texas resident with a last known address of 2212 San Gabriel, Apt. 320, Austin, Texas.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Roy because he is a resident of Texas. This Court also has personal jurisdiction over Roy because he has committed tortious conduct in Texas, purposefully availing himself of the privilege of conducting activities within Texas.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367. Google asserts a cause of action under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b). This Court has subject matter jurisdiction over this federal claim pursuant to 18 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the DTSA claim that they form part of the same case or controversy. 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."); *see, e.g., Luminati Networks Ltd. v. NetNut Ltd.,* No. 220CV00188 (JRG) (RSP), 2020 WL 8266569, at *3 (E.D. Tex. Dec. 21, 2020) (finding supplemental for plaintiff's "Texas state law claim for trade secret misappropriation . . . as it arises from the same case or controversy as the DTSA claim").

11. To the extent any of Roy's acts in violation of the DTSA took place outside of the United States, this Court has jurisdiction pursuant to 18 U.S. Code § 1837 because Roy took acts

ORIGINAL COMPLAINT                              3

while located in the United States that were "in furtherance" of his violation of the DTSA. *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-CV-00483-JRG, 2019 WL 2084426, at *9 (E.D. Tex. May 13, 2019) ("The DTSA applies to conduct occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States.")

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this is the judicial district where Roy resides and a substantial part of the events giving rise to the claims detailed herein occurred.

## FACTUAL ALLEGATIONS

*Roy Is Hired and Begins Surreptitiously Collecting Google's Trade Secrets*

13. Google hired Roy as a Silicon Engineer in Bangalore, India on or about June 7, 2020. In his role as a Silicon Engineer, Roy was responsible for assisting with the design, development, and deployment of system-on-chips used for Google's Pixel line of products (*i.e.,* Pixel smartphones, tablets, and hearables) (the "Pixel Devices"). In August 2023, Roy began working on the next generation system-on-chip that Google was designing for its unreleased Pixel Devices (the "SoC"). In this role, Roy was given the privilege of access to certain Google trade secrets related to Pixel Devices. When Google hired Roy, it had no reason to believe that Roy would end up secretly collecting Google's trade secrets and, years later, publishing the secrets after he relocated to Austin, Texas. Nor did Google expect Roy to ignore its attempts at a resolution outside of litigation and to, instead, publicly tout his malfeasance, including by, on X and LinkedIn, admitting that he will use "unethical means" to harm Google, that he would "[not] adhere to any confidentiality agreement," and publicizing that the impetus for his disclosure of Google's trade secrets was to see Google "fall."

14. Google required that Roy sign a Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreement") as a condition of his employment

ORIGINAL COMPLAINT                                4

because his role likely required access to Google trade secrets. Section 1 of the Confidentiality Agreement required that Roy:

> [H]old in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and [he] will not (i) use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of [his] employment, or (ii) disclose the Company Confidential Information to any third party without the prior written authorization of the Chief Executive Officer or the Board of Directors of the Company.

15. Roy also agreed that "it would be impossible to measure and calculate the Company's damages from any breach of [Section 1 of the Confidentiality Agreement]" and that "if [Roy] breach[es Section 1], the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court . . . and to specific performance of [Section 1 of the Confidentiality Agreement]."

16. Roy was also subject to other policies common to employees with access to Google trade secrets.  These include Google's Data Security Policy, Code of Conduct, Corporate Services Security Policy, and other policies designed in substantial part to ensure trade secret security. For example, in relevant part, Google's Code of Conduct states:

> Google has a well-earned reputation for generosity with our employee benefits and openness with confidential information shared within the company. Our ability to continue these practices depends on how well we conserve company resources and protect company assets and information. . . .
>
> Google's intellectual property rights (our . . . trade secrets . . . ) are among our most valuable assets. Unauthorized use can lead to their loss or serious loss of value. You must respect all . . . intellectual property laws.

Google's Data Security Policy similarly required Google employees to "protect the integrity of Google's data." The policy also designates Google information into three categories: (i) public, (ii) confidential, and (iii) "need-to-know." The need-to-know classification is the highest and most

restrictive classification and pertains to the most sensitive information to which only a certain, limited number of individuals are given access in order to perform their jobs. The policy does not permit employees to share such information outside of Google, or even with other employees who have not been given access to it. All the information disclosed by Roy to date has been designated as need-to-know.

17.     Google maintains policies and practices to ensure that its trade secrets remain protected after Google employees leave the company. For example, pursuant to Google's Corporate Services Security Policy, Google employees "must not take any Google Confidential or Need-to-Know information, or any other Google property when leaving the company." Further, all Google employees have access to documents on a portion of their work laptop partitioned specifically for work. Upon an employee's departure, Google disables the departing employee's ability to access the files on that partition. Even if a Google employee refuses to return his or her laptop, they are unable to access Google's property from that partition once no longer employed at Google.

18.     During his employment with Google, Roy surreptitiously collected Google's trade secrets in an undetectable manner by taking photographs of information displayed on his work computer. At the time, Google was unaware Roy was taking these photographs. Before Roy moved to the U.S. and while he remained employed by Google India Private Limited, Google discovered that Roy had in his possession certain images of Google's trade secret information related to Pixel Devices. Google addressed the issue with Roy in or about December 2023, at which time Roy agreed to delete all pictures he took from his devices and informed Google that such deletion had taken place. Roy also sent Google evidence of the deletion.

19. Google reasonably believed that Roy's misappropriation ended and that he divested himself of its trade secrets.

***Roy Resigns, Moves to Texas, and Begins Publishing Trade Secrets to Harm Google***

20. Roy subsequently tendered his resignation on or about February 22, 2024. At his request, Google placed Roy on garden leave through his last day of employment, March 6, 2024. Roy did not return his Google corporate laptop, despite being legally obligated to do so.

21. In or around August 2024, upon information and belief, Roy moved to Texas to attend a doctoral program at UT Austin. Indeed, Roy's LinkedIn profile indicates that he is pursuing a doctorate in electrical and computer engineering at UT Austin as of August 2024. And, according to the UT Austin Graduate School's academic calendar, the deadline to register for classes (and the first day of classes) was in August 2024.

22. On August 19, 2024, despite his prior agreement to delete any pictures he took of Google documents from his devices and comply with his continuing obligations to protect Google's trade secrets, Roy published a post on X stating, "I need to take unethical means to get what I am entitled to." In hindsight, this post foreshadowed Roy's concerted campaign to harm Google that followed.

23. Later that same day, Roy published a post on X consisting of the cover page of an internal confidential Google presentation:



24.     The next day, on August 20, 2024, Roy published another post on X, containing what appears to be a photograph taken during his employment of his Google-issued laptop computer displaying an internal Google document detailing the technical specifications for the Pixel smartphone's cryptographic accelerator, a processing chip that allows for more efficient processing of data and, in hand, increased device efficiency. The document's header reads: "Google Proprietary and Confidential **NOT TO BE SHARED EXTERNALLY**."

25.     Roy's post included the subversive text: "I decide the time @GoogleIndia @Google." Plainly, Google's trade secrets were being held hostage by an individual intending to inflict harm upon the company.

26. Roy published additional Google trade secrets the next day. On August 21, 2024, Roy published a post on his LinkedIn profile with a link to a Google Photos account containing pictures that he took of internal Google documents. These documents provided key specifications and features of Google's yet-to-be-released SoC for unreleased Pixel Devices. Roy then flaunted his breach, captioning his post with the following text: "Google Don't (sic) expect me to adhere to any confidentiality agreement."

27. The leaked material is highly sensitive technical information. The SoC is the "brain" of the Pixel smartphone, and responsible for, among other things, handling graphics, 5G connectivity, the Android operating system, and connecting to other phone components like cameras, display, RAM, flash storage and other critical functions. In other words, the SoC architecture determines the functionality of Google's Pixel Devices and, in hand, illustrates how Google's devices are able to compete with third-party products. Indeed, certain material published by Roy contained highly sensitive charts detailing Google's predictions about how its Pixel Devices would perform against competing devices of Apple and Qualcomm and, specifically, the technical specifications of Google's SoC that would allow Pixel Devices to better compete with Apple and Qualcomm.

28. On August 27, 2024, Google demanded that Roy immediately delete the offending posts on LinkedIn. Roy ignored Google's request. The published link was eventually disabled and there was no relevant activity on Roy's known social media accounts for weeks.

29. On October 12, 2024, Roy published a post on his X profile with the text "Lets start the series @Google @Qualcomm." The post tagged one of Google's main competitors (Qualcomm), presumably to maximize the potential harm of his disclosure of Google trade secrets. The post included four photographs of the index of a 102-page technical document labeled

"Google Confidential and Proprietary" that detailed the specifications of Google's proprietary SoC.

30. Roy continued his campaign against Google on October 16, 2024, publishing a post on X linking to photographs of two internal Google decks and one internal Google Excel spreadsheet including detailed information about Google's SoC.

31. The decks contain highly-sensitive strategic details, including information concerning the unique strengths of the SoC and specific concerns with Pixel smartphones that the SoC seeks to address. The decks also contain charts detailing the SoC's bill of materials (BOM), comparisons to the components of prior Pixel smartphone, and other non-public trade secrets related to the SoC. The Excel spreadsheet detailed internal details on the SoC's Artificial Intelligence and Machine Learning capabilities.

32. In addition to Qualcomm, Roy also copied Apple, a principal competitor of Google in the smart device market, on the post. Roy included the text: "Let me know if need more [sic] info," a brash boast implying that Roy still retained additional Google trade secret information and was ready and willing to share it with Google's competitors.

33. In October 2024, Google engaged an external investigator to locate Roy to allow Google to take more direct efforts at curbing this unlawful and harmful conduct.

**The Irreparable Harm from Roy's Publications Is Propounded When it is Further Broadcast Online**

34. On October 23, 2024, an online technology-related publication posted on X linking to an article on its website that summarizing information derived from Roy's leaks. The X post had 8,687 views as of the date of this Complaint.

35. Upon learning of the article, Google began an internal investigation to determine the source of the leaked documents that the article summarized.

36. On October 28, 2024, the outlet published another article detailing the new features of Google's Pixel devices that were reflected in the leaks. Those features have not been publicly announced by Google and the information about them has similarly been kept confidential by Google.

37. That same day, a similar article was published by another website. According to similarweb.com, a website that monitors and compiles data on online traffic, the online publication was visited by approximately more than 30M times in the past month. Google is also aware of at least two other publications that have published information gleaned from Roy's publications.

***Roy Publishes More of Google's Trade Secret Information***

38. On November 5, 2024, Roy published a new post to his public LinkedIn account, linking to a folder containing 158 photographs of internal Google files, including photographs of the deck that Roy previously published with detailed information about the unique strengths of the SoC and specific concerns with Pixel smartphones that the SoC seeks to address, and an Excel spreadsheet and other internal Google document that Roy had previously published.

39. The internal Google document is over 100 pages long and contains granular details about the SoC's processing capabilities, SoC's development challenges, and detailed SoC blueprints.

40. Together, the two decks, Excel spreadsheet, and one Google document (the "SoC Documents") that Roy posted in November consist of highly sensitive, non-public, trade secrets belonging to Google.

41. In addition, upon information and belief, based upon the images Roy published to date, Roy is in possession of the following other files containing Google's trade secrets related to Google's next generation SoC:

      a.      An internal 78-page document consisting of proprietary non-public schematics and details about the SoC, including its audio and sensor processing capabilities.

      b.      An internal 110-page document consisting of proprietary non-public schematics and details about the SoC, including its video processing capabilities.

      c.      An internal 12-page document that provides details about the SoC's architecture, including past and future roadmaps documenting the SoC's development.

      d.      An internal 24-page document includes schematics and details about the SoC's security features. (Paragraphs 41a. through 41d., together with the Soc Documents , the "SoC Trade Secret Documents").

42.      The SoC Trade Secret Documents comprise highly sensitive, non-public, trade secrets belonging to Google that were developed over years and many hundreds of hours (if not more) of diligent work by Google engineers and other employees. These materials would allow a competitor to, among other things, reverse engineer Google's SoC or improve its own competing product in order to better compete with Google's next generation SoC when implemented in Pixel Devices.

43.      The information in the SoC Trade Secret Documents is not known to the public and cannot be recreated from public sources. Further, even if an individual has the know-how to distill the capability of an SoC contained in Google's Pixel Devices, that individual will be unable to recreate the SoC, as the SoC has yet to be produced in Pixel Devices. Similarly, information about Google's future SoC is not available to its competitors because they can utilize such information to gain a competitive edge over Google by updating their own SoCs with functions undercutting those that Google plans to implement in its future devices. Finally, no Google employee may access any of the foregoing files or the information they contain without first executing a

nondisclosure or confidentiality agreement with Google and being subject to Google's policies and practices for protecting such information.

44. On November 8, 2024, an online technology-related publication posted another article detailing known issues with the current SoC in Google's Pixel smartphone, including a graphic related to battery life and heat resistance of the Pixel smartphone that is substantively identical in style and content with a chart in one of the decks of which Roy published photographs.

45. Based on the contents of the articles and Google's internal investigation, Roy's leaks were determined to be the source material for the articles.

### *Google Locates and Contacts Roy, Who Ignores Google's Attempts at a Resolution and Escalates the Matter*

46. From the time of his resignation and throughout the dates of the above posts and disclosures, Google was unaware that Roy relocated to the United States. Once Google suspected that he may be in Austin, Texas, Google retained an external investigator in an effort to locate Roy and to obtain his voluntary compliance to cease any further publication of Google's stolen trade secrets.

47. On or about November 5, 2024, Google's external investigator notified Google that they believed they had located Roy on UT Austin's campus.

48. On November 14, 2024, Google's external investigator was able to hand-deliver a final cease and desist letter to Roy, demanding the immediate removal and return of Google's trade secret information. A copy of the cease and desist was also emailed to Roy's last known email address on that same day. The cease and desist gave Roy sufficient time to respond and cooperate with Google in divesting himself of Google's trade secrets.

49. The very next day, rather than beginning to cooperate with Google, Roy made a new post on LinkedIn with a link to three of the SoC Trade Secret Documents, simultaneously threatening legal action against LinkedIn and calling Google both a "coward" and a "fraud."

50. As of the date of this Complaint, Roy has neither complied with the cease and desist nor responded to it.

51. Google has suffered and will continue to suffer irreparable harm because of Roy's continued publication of its trade secrets. Google also stands to suffer continued and additional harm because, upon information and belief, Roy remains in possession of more documents and information than what he has disclosed to date. Roy has made clear by his words and actions that he will continue to publish Google's stolen information in direct disregard of his legal obligations to protect such information.

52. Google has exhausted all other avenues at protecting its trade secrets. Short of this action, no adequate or other remedy at law is available.

53. Accordingly, Google commenced this action to protect its trade secrets, including the SoC Trade Secret Documents which are owned by Google LLC and/or Google India Private Limited, and other legitimate business interests from irreparable and ongoing harm by Roy.

## CAUSES OF ACTION

### Count One: Misappropriation of Trade Secrets under Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

54. Google repeats and re-alleges the foregoing allegations as if fully set forth herein.

55. Roy is subject to the DTSA because he now lives in the United States and has violated DTSA after he moved to the United States by threatening to publish Google's trade secrets and actually publishing them.

ORIGINAL COMPLAINT                              14

56. In his position with Google, Roy had access to trade secrets of significant value to Google.

57. As set forth above, Google spent significant time and money to develop certain trade secret information regarding Google's SoC, its specifications, its strategic and competitive value, and its architecture. This information constitutes "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

58. Google has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) having policies and practices that are designed to identify and protect its trade secrets; (b) limiting access to trade secrets to those employees who need to know the information in order to perform their roles for Google; (c) terminating employees' access to Google's systems when employees are terminated or resign; (d) training employees on the importance of protecting Google's trade secrets; (e) requiring employees to execute confidentiality agreements as a condition of employment, whereby employees contractually promise to not disclose Google confidential information and trade secrets without Google's authorization.

59. Google's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other companies or individuals (in Google's industry or elsewhere) who could obtain an advantage from it. Google provided Roy access to its trade secret information for the limited purpose of using this information during the scope of his employment at Google for the benefit of Google.

60. The trade secrets detailed above are used in interstate commerce by Google LLC— a Delaware limited liability company—which utilizes the trade secret information in its businesses

across the United States, including the development of the SoC which will be used in Pixel smartphones and other Pixel devices marketed and sold across the United States.

61. Roy has repeatedly used and disclosed Google's trade secrets, including without limitation, trade secrets related to Google's SoC.

62. Unless enjoined by this Court, Roy's misappropriation of Google's trade secrets will cause significant irreparable harm to Google, and Google has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as Google's trade secret information, have been misappropriated. As such, Google is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

63. As a direct, proximate, and foreseeable result of Roy's misappropriation of Google's trade secrets, Google has been damaged in an amount to be determined at trial and is entitled to recover attorneys' fees and expenses from Roy under the DTSA.

**Count Two: Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A[1]**

64. Google repeats and re-alleges the foregoing allegations as if fully set forth herein.

65. Roy is subject to the TUTSA because he now lives in Texas and has violated TUTSA by threatening and actually publishing Google's trade secrets while residing in Texas.

---

[1] In trade secret misappropriation causes of action where there is any question about the choice of state law to be applied, the applicable law is the place of the wrongdoing at issue – here, Texas. *See generally* RESTATEMENT (SECOND) CONFLICT OF LAWS § 145, Comment f (explaining why "the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts."); *MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 422 F. Supp. 2d 724, 739 (N.D. Tex. 2006) (Texas law applied to trade secret claim under this Restatement test because alleged wrongdoing took place there, though both parties resided elsewhere); *Edifecs Inc. v. TIBCO Software, Inc.*, 756 F. Supp. 2d 1313, 1319 (W. Wash. 2010) (law of California, where alleged misappropriation occurred, applied on motion to dismiss, even though Plaintiff was based in Washington; "Comment F of the Restatement shows that the place where the injurious conduct occurred is heavily weighted in trade secret disputes.")

66. In his position with Google, Roy had access to trade secrets of significant value to Google.

67. As set forth above, Google spent significant time and money to develop certain trade secret information regarding Google's SoC, its specifications, its strategic and competitive value, and its architecture. This information constitutes "trade secrets" under the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.

68. Google has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) having policies and practices that are designed to identify and protect its trade secrets; (b) limiting access to trade secrets to those employees who need to know the information in order to perform their roles for Google; (c) terminating employees' access to Google's systems when employees are terminated or resign; (d) training employees on the importance of protecting Google's trade secrets; (e) requiring employees to execute confidentiality agreements as a condition of employment, whereby employees contractually promise to not disclose Google confidential information and trade secrets without Google's authorization.

69. Google's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other companies or individuals (in Google's industry or elsewhere) who could obtain an advantage from it. Google provided Roy access to its trade secret information for the limited purpose of use of this information during the scope of his employment for Google for the benefit of Google.

70. Roy has repeatedly used and disclosed Google's trade secrets to the public, including, without limitation, information related to Google's next generation SoC.

71. Unless enjoined by this Court, Roy's misappropriation of Google's trade secrets will continue to cause significant irreparable harm to Google, and Google has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as Google's trade secret information discussed above, have been misappropriated. As such, Google is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

72. As a direct, proximate, and foreseeable result of Roy's misappropriation of Google's trade secrets, Google has been damaged in an amount to be determined at trial and is entitled to attorneys' fees and expenses under TUTSA.

## ATTORNEYS' FEES AND COSTS

Google seeks reasonable and necessary attorneys' fees and costs against Roy under the DTSA and TUTSA.

## JURY DEMAND

Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Google requests that judgment be entered in its favor and against Roy as follows:

a. Ordering that Roy is liable for:

  i. Violating the DTSA; and

  ii. Violating TUTSA.

b. Upon application, a temporary restraining order, a preliminary injunction, and a permanent injunction:

  i. Enjoining Roy from accessing, using, disclosing, distributing, disseminating, or discussing Google's trade secret information and other Confidential Information;

      ii.      Ordering Roy, and anyone acting or purporting to act in concert or participation with him, to promptly return to Google all information, documents, and tangible things in their possession, custody, or control (if any), whether in physical or digital format, including any and all copies thereof, that contain Google's trade secrets and other confidential information;

      iii.      Ordering Roy to produce personal and work computers, phones, iPads, personal digital assistants (PDAs), flash drives and other similar electronic devices, and give access to his personal email accounts and any online and cloud storage accounts to an independent third-party forensic analyst selected by Google for imaging and forensic examination.

c.      Awarding actual, compensatory, and/or consequential damages to Google in an amount to be determined at trial;

d.      Awarding exemplary damages to Google in an amount to be determined at trial;

e.      Ordering an accounting of all Roy's disclosures and/or uses of Google's trade secrets and/or property;

f.      Awarding Google reasonable and necessary attorneys' fees, costs, and related expenses incurred in bringing and prosecuting this action;

g.      Awarding pre-judgment and post-judgment interest at the highest lawful rates; and

h.      Awarding all such other and further relief that Google may be entitled to in law or equity.

Date: November 19, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

 /s/ Jason M. Storck
Jason M. Storck
Texas Bar No. 24037559
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
900 S Capital of Texas Hwy
Las Cimas IV, 5th Floor
Austin, Texas 78746
jstorck@wsgr.com
Telephone: 512-338-5435
Facsimile: 866-974-7329

Matthew D. Gorman
*pro hac vice application forthcoming*
One Boston Place
201 Washington Street, Suite 2000
Boston, MA 02108
mgorman@wsgr.com
Telephone: 212-497-7786
Facsimile: 866-974-7329

**Attorneys for Plaintiffs GOOGLE LLC
and GOOGLE PRIVATE INDIA LIMITED**