**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GOOGLE LLC and** | § | |
| **GOOGLE INDIA PRIVATE LIMITED,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | **Civil Action No. 1:24-cv-1425** |
| **v.** | § | |
| | § | |
| **HARSHIT ROY,** | § | |
| | § | |
| **Defendant.** | | |

## APPLICATION FOR A TEMPORARY RESTRAINING ORDER

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 3

    A.    Roy is Hired and Begins Surreptitiously Collecting Google's Trade
        Secrets ....................................................................................................... 4

    B.    Roy Resigns and his Misconduct immediately thereafter is Resolved by
        Google. ..................................................................................................... 4

    C.    Roy Moves to Texas and Begins Publishing Trade Secrets to Harm
        Google. ..................................................................................................... 6

    D.    Google Locates and Contacts Roy, Who Ignores Google's Attempts at a
        Resolution and Escalates the Matter. ...................................................... 8

III.  ARGUMENTS AND AUTHORITIES ................................................................. 8

    A.    Legal Standard. ........................................................................................ 9

    B.    Google Will Succeed on the Merits of Its Defend Trade Secrets Act and
        Texas Uniform Trade Secrets Act Claims. ............................................. 9

        1.    Google's Pixel-Related Information is Entitled to Trade Secret
                Protection. .................................................................................. 10

        2.    Roy's Retention of Google's Trade Secret Information in Violation
                of His Confidentiality Agreement Constitutes Improper Means. ............. 13

        3.    Roy's Disclosure of Google's Trade Secret Constitutes Use in
                Violation of TUTSA and DTSA. ............................................... 14

    C.    Google Has Suffered and Will Continue to Suffer Irreparable Harm if
        Roy's Wrongful and Unlawful Conduct Is Not Enjoined.................................... 15

    D.    The Balance of Equities Favors Google. ............................................... 17

    E.    The Public Interest Supports Injunctive Relief. .................................... 19

IV.   CONCLUSION ................................................................................................. 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*A.M. Castle & Co. v. Byrne*,
    123 F. Supp. 3d 909 (S.D. Tex. 2015) ............................................................................13

*Advanced Micro Devices, Inc. v. Feldstein*,
    No. CV 13-40007-TSH, 2013 WL 10944934 (D. Mass. May 15, 2013) ........................12

*Allied Home Mortg. Corp. v. Donovan*,
    830 F. Supp. 2d 223 (S.D. Tex. 2011) .............................................................................9

*Apple Inc. v. Rivos, Inc.*,
    No. 5:22-CV-02637-EJD, 2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) .......................13

*BarZ Adventures Inc. v. Patrick*,
    No. 4:20-CV-299, 2022 WL 4082464 (E.D. Tex. Sept. 6, 2022).....................................10

*Comet Techs. United States of Am. Inc. v. Beuerman*,
    No. 18-CV-01441-LHK, 2018 WL 1990226 (N.D. Cal. Mar. 15, 2018) ........................12

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) ...........................................................................................15

*First Command Fin. Planning, Inc. v. Velez*,
    No. 4:16-CV-01008-O, 2017 WL 2999405 (N.D. Tex. May 8, 2017)..............................10

*G&G Closed Circuit Events, LLC v. 1) GCF enterprises LLC*,
    EP-15-CV-00111-KC, 2015 WL 7313427 (W.D. Tex. Nov. 19, 2015)...........................15

*Glycobiosciences, Inc. v. Woodfield Pharm., LLC*,
    No. 4:15-CV-02109, 2016 WL 1702674 (S.D. Tex. Apr. 27, 2016)................................11

*Hybir, Inc. v. Dell Glob., B.V.*,
    No. 1:22-CV-00472-LY, 2023 WL 1424074 (W.D. Tex. Jan. 31, 2023), *report
    and recommendation adopted*, 2023 WL 3035424 (W.D. Tex. Feb. 28, 2023)...............13

*Insight Direct USA, Inc. v. Kelleher*,
    No. 1:17-CV-252-RP, 2017 WL 1284948 (W.D. Tex. Apr. 5, 2017) ..............................18

*Intel Corp. v. Rais*,
    No. 1:19-cv-20-RP, 2019 WL 164958 (W.D. Tex. Jan. 10, 2019)....................................9

*Kia Am., Inc. v. McAdams*,
    No. 6:23-CV-00722-ADA-JCM, 2024 WL 4674565 (W.D. Tex. Oct. 15, 2024)............17

*Lakedreams v. Taylor*,
    932 F.2d 1103 (5th Cir. 1991) ...........................................................................................9

*Maxim Healthcare Staffing Servs., Inc. v. Mata*,
    No. SA-21-CV-01100-XR, 2022 WL 106153 (W.D. Tex. Jan. 11, 2022) .......................10

*Maxxim Indus. USA II, LLC v. Texas Chrome Transp., Inc.*,
    No. SA-24-CV-00046-FB, 2024 WL 4198448 (W.D. Tex. Aug. 23, 2024) ....................10

*Miner, Ltd. v. Anguiano*,
    383 F. Supp. 3d 682 (W.D. Tex. 2019)..............................................................................19

*NRT Texas LLC v. Wilbur*,
    No. 4:22-CV-02847, 2022 WL 5434332 (S.D. Tex. Sept. 7, 2022) ...........................17, 19

*NuScience Corp. v. Henkel*,
    No. CV 08-2661-GAF, 2014 WL 5846754 (C.D. Cal. Nov. 12, 2014)............................14

*Picker Int'l, Inc. v. Blanton*,
    756 F. Supp. 971 (N.D. Tex. 1990) ..................................................................................19

*Posdata Co. v. Kim*,
    No. C-07-02504 RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007)...........................12

*Providence Title Co. v. Truly Title, Inc.*,
    547 F. Supp. 3d 585 (E.D. Tex. 2021), *aff'd sub nom.*
    *Providence Title Co. v. Fleming*,
    No. 21-40578, 2023 WL 316138 (5th Cir. Jan. 19, 2023)...............................................14

*Sebastian v. Texas Dep't of Corrections*,
    541 F. Supp. 970 (S.D.Tex.1982) ....................................................................................10

*Sunbelt Rentals, Inc. v. Holley*,
    No. 3:21-CV-3241-N) 2022 WL 1049468 (N.D. Tex., Apr. 7, 2022)..............................10

*TFC Partners, Inc. v. Stratton Amenities, LLC*,
    No. 1:19-CV-58-RP, 2019 WL 369152 (W.D. Tex. Jan. 30, 2019).........................10, 15

*Thoroughbred Ventures, LLC v. Disman*,
    No. 4:18-CV-00318, 2018 WL 8786664 (E.D. Tex. May 1, 2018) .................................18

*Wellogix, Inc. v. Accenture, L.L.P.*,
    716 F.3d 867 (5th Cir. 2013) ...........................................................................................14

*Wells Fargo Bank, N.A. v. Clark*,
    No. CIV. 11-6248-TC, 2011 WL 3715116 (D. Or. Aug. 23, 2011) .................................14

*Wicked Hot Vapors, LLC v. Vaporpro, LLC*,
    No. 4:13-CV-287, 2013 WL 12123653 (E.D. Tex. Oct. 8, 2013) ......................................9

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008)..............................................................................................................17

## STATUTES

18 U.S.C. § 1836............................................................................................................................10

18 U.S.C. § 1836(b)(3)(A)(i) ...................................................................................10

18 U.S.C. § 1839 .....................................................................................................14

18 U.S.C. § 1839(5) .................................................................................................13

18 U.S.C. § 1839(6)(A) ............................................................................................13

Tex. Civ. Prac. & Rem. Code § 134A ......................................................................10

Tex. Civ. Prac. & Rem. Code § 134A.002(2) ...........................................................13

Tex. Civ. Prac. & Rem. Code § 134A.002(3) ...........................................................13

Tex. Civ. Prac. & Rem. Code § 134A.002(6) ...........................................................11

Tex. Civ. Prac. & Rem. Code § 134A.003 ................................................................10

**RULES**

Fed. R. Civ. P. 65(b) .................................................................................................3

## I.      <u>INTRODUCTION</u>

Plaintiffs Google LLC and Google India Private Limited (jointly "Google") file this Verified Application for a Temporary Restraining Order against Harshit Roy ("Roy").

Roy is a former Google employee who is now an unabashed leaker of Google's highly-sensitive trade secrets. Before leaving Google, Roy clandestinely took hundreds of pictures of individual slides and pages of documents containing some of Google's most sensitive trade secrets about its Pixel devices. He did so without Google's knowledge or permission. Roy has impermissibly retained these pictures for months and is now serially posting them to his public social media accounts. He knows he cannot and should not be doing so, defiantly stating on social media: "Google [sic] Don't expect me to adhere to any confidentiality agreement."

This brazen misconduct violates federal and state law, and goes far beyond a garden-variety theft of trade secrets. As evidenced by the record, Roy wanted to steal and disseminate Google's trade secrets. To avoid detection of his illicit activity by Google, he took pictures of sensitive files on his laptop screen and saved the pictures to his personal devices. Roy wants to do Google harm. He has published a trove of highly sensitive information and specifically invited Google's competitors to use it.

The full scope of Roy's misconduct remains unknown and his illegal activity is ongoing. Everything points to him continuing to illegally share Google's trade secrets since he has made plain he does not care about his legal obligations. His behavior has been erratic, dishonest, and illegal. He began this behavior in India—where he worked until he resigned in March 2024 following discovery of separate, prior leaks of confidential information that Google addressed with him.  He is now engaging in such behavior again, this time in the U.S., where he appears to have moved in August 2024 for graduate school.

Google just located Roy in Austin, Texas having recently determined that he moved here to pursue a graduate program at the University of Texas at Austin ("UT Austin"). Google then immediately sought to resolve this matter out of court and secure Roy's voluntary cooperation and compliance. This past week, Google hand-served and emailed a letter to Roy requesting that he meet with Google, take steps to remove and delete any trade secret Google materials he retained, and sign an affidavit confirming that he no longer possessed any such trade secrets. Roy ignored Google's request, prompting the present application.

Google seeks immediate, targeted relief to stop Roy from continuing to publicly disclose Google's trade secrets, and to have Roy divest himself of such highly-sensitive information. Google is compelled to seek such relief to reclaim its rightfully owned trade secrets and stop the unfair competition and other harms resulting from the ongoing and continued disclosure of Google's trade secrets by a misguided bad actor. Google respectfully requests an injunction to (1) prohibit Roy from further disclosing Google trade secrets, on the internet or otherwise, including by requiring him to remove all trade secrets currently published on his social media profiles, publicly accessible network shares, and any other online or electronic location where they may be viewed or used by others; (2) stop any others acting in concert with or aiding and abetting Roy from doing the same; (3) obtain the return of its property, including all trade secrets, from Roy's wrongful possession; and (4) have Roy permanently divest himself of any trade secrets or other Google property in his possession or control.

Google will be irreparably harmed absent the requested relief. Roy's actions have already resulted in the public disclosure of Google's trade secrets and the dissemination of that information through multiple online publications, several of which were specifically directed to Google's competitors by Roy. Google faces additional significant harm in the highly competitive market for

smart devices if this information remains public and if Roy is permitted to continue to retain Google's trade secrets to be used and disclosed at his whim. Roy has made clear he will neither willingly divest himself of Google's trade secrets nor stop publicly disclosing them without court intervention. Rather, Roy has ignored multiple attempts by Google to resolve this matter and continues to publicly flaunt his noncompliance and desire for Google's competitors to see this information. An injunction is necessary and appropriate to compel Roy to take down any publicly available Google confidential information, to divest himself of all such Google information still improperly in his possession, and to stop any future disclosures.

For these and the reasons below, pursuant to Fed. R. Civ. P. 65(b), Google hereby moves for a temporary restraining order ("TRO") enjoining Roy from continuing to use and disclose Google's trade secrets and to prevent further harm to Google until this Court may decide the merits of the Complaint to which this TRO is attached.

## II.    FACTUAL BACKGROUND

Google Pixel is a brand of consumer electronic devices developed by Google, including smartphones. Pixel smartphones utilize Google's system-on-chip ("SoC"), a custom-built processing chip, used to help operate the Pixel smartphone's systems ("Pixel Architecture"). Declaration of Ali Iranli ("Iranli Decl."), ¶ 3. The SoC is the "brain" of the Pixel smartphone, and responsible for, among other things, handling graphics, 5G connectivity, the Android operating system, and connecting to other phone components like cameras, display, RAM, flash storage and other critical functions. *Id.*

Recently, Google has begun developing the next generation of its SoC which would allow Google to obtain a larger share of the smartphone market and to better compete with companies like Apple and Qualcomm. Iranli Decl., ¶ 5. The development of the next generation SoC is part of a secret, code-named project (the "Code-Named Project") and information related to the Code-

Named Project and the next generation SoC is highly confidential, trade secret information and Google goes to extensive lengths to keep this information out of public consumption and away from its competitors. Iranli Decl., ¶¶ 4, 6.

**A.** **Roy is Hired and Begins Surreptitiously Collecting Google's Trade Secrets**

Google hired Plaintiff Harshit Roy as a Silicon Engineer in Bangalore, India on June 7, 2020. Declaration of Shiviinder Singh ("Sing Decl."), ¶ 4. In connection with his employment, Roy signed an employment agreement that included a Confidential Information and Invention Assignment Agreement (the "Confidentiality Agreement"). Among other things, the Confidentiality Agreement required that Roy:

> "[H]old in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and [ ][he] will not (i) use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of [his]my employment, or (ii) disclose the Company Confidential Information to any third party without the prior written authorization of the Chief Executive Officer or the Board of Directors of the Company."

Singh Decl., ¶ 5, Ex. A.

At Google, Roy worked on the design, development, and deployment of system-on-chips used for Pixel devices.  In August 2023, Roy began working on the next generation SoC that Google is designing for its unreleased Pixel devices (the "SoC"). Roy had access to Google's trade secret information related to its Pixel Architecture, including internal presentations, schematics, plans, and designs for the next generation SoC. Iranli Decl., ¶ 8. Google now knows that Roy used that access to secretly exfiltrate its highly-sensitive trade secret information.

**B.** **Roy Resigns and his Misconduct immediately thereafter is Resolved by Google.**

Roy submitted his resignation on February 22, 2024 after Google had to confront him on multiple occasions about his role in leaks of company trade secrets. Roy's employment with

Google ultimately ended on March 6, 2024. Singh Decl., ¶ 9. Under the terms of his Confidentiality Agreement, Roy was required to "immediately deliver to the Company, and . . . not keep in [his] possession, recreate, or deliver to anyone else, any and all Company property, including but not limited to, "Company Confidential Information" upon his termination. Singh Decl., ¶ 5, Ex. A. He did not do so.

Despite his obligations to return Google's property and his ongoing confidentiality obligations to Google, Roy published photographs of Google's trade secret information, including presentation decks and other internal Google work product, related to Google's next generation SoC, including its technical specifications, detailed diagrams of its composition, charts reflecting its competitiveness with Apple and Qualcomm SoCs, and summaries of the new functionalities and features it will bring to Pixel devices. Singh Decl., ¶ 10. Specifically, on February 29, 2024, Roy published a link to a personal Google Drive folder on his public X.com profile ("X", formerly known as Twitter). *Id.* On March 10, 2024 Roy published a link to a Google Drive folder to his public LinkedIn profile. Singh Decl., ¶ 11. These folders contained hundreds of photographs, apparently taken by Roy, of Google's trade secret Pixel information. Singh Decl., ¶¶ 10-11.

In March 2024, after becoming aware of these publications, Google wrote Roy's counsel in India to immediately stop such misconduct and to have Roy delete all Google confidential information from his possession. Singh Decl., ¶ 12. Roy, through Indian counsel, admitted that he wrongfully retained and disclosed Google confidential information and agreed to delete the social media posts and any Google confidential information in his possession. Singh Decl., ¶ 13. Google reasonably understood Roy's misconduct to be resolved once the posts were deleted and the Google Drive folders were disabled.

**C.**     **Roy Moves to Texas and Begins Publishing Trade Secrets to Harm Google.**

In or around August 2024, unbeknownst to Google, Roy moved to Austin, Texas to pursue a doctoral program at UT Austin. Thereafter, Roy began publishing a new series of posts to X that again had photos of Google's confidential trade secret information. Singh Decl., ¶ 15.  Roy also used those posts as shorthand manifestos. On August 19, Roy published a post stating, "I need to take unethical means to get what I am entitled to," and later that same day posted a photo of a cover page from a confidential Code-Named Project presentation. Singh Decl., ¶ 15 On August 20, Roy published a post, stating "I decide the time @GoogleIndia @Google" along with a picture of an internal Google document with the header, "Google Proprietary and Confidential **NOT TO BE SHARED EXTERNALLY**." Singh Decl., ¶ 15. The picture contained a proprietary schematic reflecting technical specifications for the Pixel smartphone's cryptographic accelerator, a processing chip that allows for more efficient processing of data and, in hand, increased device efficiency. *Id.*.

On August 21, Roy posted a complete picture of the above-referenced schematic and threatened to post more information on LinkedIn, stating in the post: "The next one will bw [sic] on linkedin @GoogleIndia @Google." Singh Decl., ¶ 16, Ex. G. That same day, Roy published a post on his LinkedIn profile with more sensitive Google trade secret information, stating "Google Don't expect me to adhere to any confidentiality agreement," and including a link to dozens of photographs he took of trade secrets reflecting build and technical specifications, capabilities, roadmaps, configurations, and the competitive value of the next generation SoC. Singh Decl., ¶ 16, Ex. H.

On August 27, 2024, incorrectly believing that Roy was still in India, Google sent a letter to Roy's Indian counsel, demanding that Roy immediately delete the posts on X and LinkedIn and comply with his obligations to Google. Roy did not respond. Singh Decl., ¶ 17, Ex. I. Roy then

went radio silent until his activities began anew once he was enrolled at UT Austin after moving to the United States. On October 12, 2024, Roy published a post on his X profile with the text "Lets start the series @Google @Qualcomm," presumably implying that more publications of Google's trade secrets were forthcoming and copying one of Google's main competitors (Qualcomm) to flag that he had disclosed Google trade secrets, which would be helpful to its business. Singh Decl., ¶ 18. The post included four photographs of an index to a Google's confidential Pixel-related information. *Id*. The footer of the index stated: "Copyright: 2023 Google, Inc. Google Confidentiality and Proprietary." *Id*.

Roy has leaked Google's trade secrets numerous times since coming to the United States. For example, on October 16, 2024, Roy published a post on X with a link to screenshots containing highly-sensitive strategic details about the next generation SoC, including areas in which the SoC excels, diagrams and charts detailing the SoC's components and comparing them with the Pixel smartphone's current SoC, the SoC's Artificial Intelligence and Machine Learning capabilities, among other proprietary details, technical specifications, and blueprints of the SoC. Singh Decl., ¶ 19; Iranli Decl. ¶¶ 9-11. Roy again copied Qualcomm on the post, but this time also copied Apple, a principal Google competitor in the smartphone and tablet markets, along with the text: "Let me know if need more [sic] info," implying that Roy still retained *other* Google trade secret information and was ready and willing to share it with anyone, including, and in particular, some of Google's main competitors. Singh Decl., ¶ X19 Ex. K. On November 5, 2024, Roy again published posts to his LinkedIn account with a link to a plethora of photographs he took of Google's trade secrets, including photographs reflecting granular details about the processing capabilities of the next generation SoC, challenges that the next generation SoC's development has faced, and next generation SoC blueprints. Singh Decl., ¶ 20; Iranli Decl. ¶¶ 12-14.

D.     **Google Locates and Contacts Roy, Who Ignores Google's Attempts at a Resolution and Escalates the Matter.**

Google did not know where Roy resided when he renewed his illegal campaign in October. Driven to locate him and stop further dissemination of its trade secret information, Google hired Tal Global, a professionally-certified investigator, for this purpose. Declaration of Matthew Gorman ("Gorman Decl."), ¶ 2. On October 25, 2024, Tal Global confirmed that Roy was enrolled at UT Austin in a graduate program within the Chandra Department of Electrical and Computer Engineering. Gorman Decl., ¶ 3. Tal Global was able to positively identify Roy in Austin, Texas, as of October 31, 2024. Gorman Decl., ¶ 4. Tal Global was unable to determine his specific Austin address until November 14, 2024. *Id.*

On November 14, 2024, Google personally served Roy with a cease and desist letter and a request for cooperative resolution. Gorman Decl., ¶ 5. Google also sent a copy of the letter to Roy's last-known personal email address that same day. *Id.* Among other things, Google requested that Roy immediately return all Google confidential information in his possession, confirm that he removed all Google information from his internet and social media accounts, and permit Google to perform searches on his electronic devices, social media accounts, and cloud and email accounts to ensure permanence deletion of all confidential and trade secret information of Google. Gorman Decl., ¶ 5, Ex. A. The very next day, rather cooperating with Google, Roy made a new post on LinkedIn with a link to three of the SoC Trade Secret Documents, simultaneously threatening legal action against LinkedIn and calling Google both a "coward" and a "fraud." Roy did not otherwise respond as of the date of this Application.

### III.     ARGUMENTS AND AUTHORITIES

This is not a close case. Roy improperly retained Google's trade secret information after leaving Google and, when caught, agreed that he would delete such Google information in his

possession.  Instead, he retained Google's trade secrets, moved to Texas, started publicly posting them online once again, and has brazenly threatened to continue doing so. His own words show that he knows he is violating the law. The evidence clearly establishes a substantial likelihood of success on the merits regarding Google's trade secret claims, irreparable injury to Google absent injunctive relief, that such injury far outweighs the negligible harm the injunctive relief will cause Roy (if any), that the grant of injunctive relief will serve the public interest, and that there is a high likelihood that absent such relief, Roy will continue to compound the injury caused to Google. Therefore, granting Google's request for a TRO is necessary and justified under the law.

A.    <u>Legal Standard</u>.

Google is entitled to injunctive relief if it establishes: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not issued; (3) [that] the threatened injury [if the injunction is denied] outweighs the threatened harm to the defendant [that will result if the injunction is granted]; and (4) that the granting of [a TRO] will not disserve the public interest." *Intel Corp. v. Rais*, No. 1:19-cv-20-RP, 2019 WL 164958, at *3 (W.D. Tex. Jan. 10, 2019) (alterations in original).

B.    <u>Google Will Succeed on the Merits of Its Defend Trade Secrets Act and Texas Uniform Trade Secrets Act Claims</u>.

In seeking injunctive relief, Google does not need to prove its case with absolute certainty. *See e.g.*, *Wicked Hot Vapors, LLC v. Vaporpro, LLC*, No. 4:13-CV-287, 2013 WL 12123653, at *2 (E.D. Tex. Oct. 8, 2013) (citing *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991)). Rather, it is enough for Google to raise questions going to the merits as to make them a fair ground for litigation and for more deliberate investigation. *See Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011) ("[I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as

to make them a fair ground for litigation and thus for more deliberate investigation.") (quoting *Sebastian v. Texas Dep't of Corrections,* 541 F. Supp. 970, 975 (S.D.Tex.1982)).

To establish a violation of TUTSA, Google must show: (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) use of the trade secret without Google's authorization. Tex. Civ. Prac. & Rem. Code § 134A; *see e.g.*, *Sunbelt Rentals, Inc. v. Holley*, No. 3:21-CV-3241-N) 2022 WL 1049468, at *6 (N.D. Tex., Apr. 7, 2022) (granting preliminary injunction as to claims for misappropriation under TUTSA). "The statutory texts of DTSA and TUTSA are virtually identical, and claims under DTSA and TUTSA require proof of the same elements (other than the interstate commerce element required in DTSA . . . )." *Maxxim Indus. USA II, LLC v. Texas Chrome Transp., Inc.*, No. SA-24-CV-00046-FB, 2024 WL 4198448, at *5 (W.D. Tex. Aug. 23, 2024); *see also* 18 U.S.C. § 1836. Both DTSA and TUTSA also provide for injunctive relief to prevent "threatened misappropriation." *See e.g.*, *Maxim Healthcare Staffing Servs., Inc. v. Mata*, No. SA-21-CV-01100-XR, 2022 WL 106153, at *6 (W.D. Tex. Jan. 11, 2022) (citing Tex. Civ. Prac. & Rem. Code § 134A.003); *BarZ Adventures Inc. v. Patrick*, No. 4:20-CV-299, 2022 WL 4082464, at *5 (E.D. Tex. Sept. 6, 2022) (citing 18 U.S.C. § 1836(b)(3)(A)(i)).

### 1. Google's Pixel-Related Information is Entitled to Trade Secret Protection.

At the TRO stage, a court does not determine if the information at issue is a trade secret; instead, it determines if "the applicant has established the information is entitled to trade secret protection until a trial on the merits." *First Command Fin. Planning, Inc. v. Velez*, No. 4:16-CV-01008-O, 2017 WL 2999405, at *6 (N.D. Tex. May 8, 2017). Information is entitled to trade secret protection if the plaintiff took "reasonable measures under the circumstances to keep the information secret" and it "derive[s] economic value from not being generally known or readily ascertainable through proper means." *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-

CV-58-RP, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) (quoting Tex. Civ. Prac. & Rem. Code § 134A.002(6)). "A trade secret may consist of any formula, pattern, device, or compilation of information used in one's business, and which gives one an opportunity to obtain an advantage over competitors who do not know or use it." *Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, No. 4:15-CV-02109, 2016 WL 1702674, at *6 (S.D. Tex. Apr. 27, 2016) (Plaintiff demonstrated proprietary formulation, delivery system, and technical information were confidential, subject to protection efforts, and not well known outside of Plaintiff's "circle of confidence").

Google's investigations to date establish that Roy possesses and has published images of multiple confidential Google documents and presentations. *See* Singh Decl., ¶¶ 6-11, 15-21, Exs B-C, G-H, J-N. Those documents and presentations contain at least the following Google trade secret information: (1) the specifics of the next generation SoC architecture; (2) schedules and milestones for the next generation SoC; (3) detailed lists of features for the next generation SoC; (4) architecture specifications for audio and sensor processing in Pixel devices; (5) architecture specifications for graphics, designs, benchmarks, artificial intelligence and machine learning capabilities, and product features for the Pixel devices; (6) architecture specifications for the video encoder and decoder sub-system features for Pixel devices; and (7) security features for Pixel devices. Singh Decl., ¶¶ 6-11, 15-22, Exs. B-C, G-H, J-N; Iranli Decl. ¶ 15.

Google takes reasonable and appropriate measures to secure its trade secrets, including the above-referenced Pixel-related information and documents. For example, among other things, Google (a) has policies and practices that are designed to identify and protect its confidential information, (b) requires its employees to use passwords to protect Google's systems containing confidential information (including, for example, multiple layers of passwords and multifactor authentication), (c) prohibits the sharing of passwords, (d) limits access to confidential information

to those employees who need to know the information in order to perform their roles for Google, (e) terminates employees' access to Google's systems when employees are terminated or resign, and (f) trains employees on the importance of protecting Google's confidential information. Singh Decl., ¶ 2. Google also requires all employees to execute confidentiality agreements, which prohibit the unauthorized disclosure of confidential information to third parties. Singh Decl., ¶¶ 2-3, 5, Ex. A. Roy was subject to those protective measures, including being required by Google to sign the Confidentiality Agreement at the outset of his employment, and Google has vigorously sought to enforce those obligations against Roy. Singh Decl., ¶¶ 5, 12-14, I, Exs. A, D-F, H.

Google's Pixel-related trade secret information derives economic value from not being known. Pixel is Google's brand of consumer electronic devices, including smartphones, which compete directly with other major smartphone producers, like Apple. Google's Pixel devices utilize its custom-built processing chip, called Google Tensor processors, to operate Pixel systems. Iranli Decl., ¶¶ 2-3. Google's Pixel technology is proprietary, not publicly known, and cannot be reverse engineered. Iranli Decl., ¶ 4. Google tensors, SoC processors, and Pixel Architecture are unique to Pixel devices and Google has invested significant money and manpower into this technology. Iranli Decl., ¶ 5.

Google's Pixel information (as described herein and in the supporting declarations) clearly satisfies the definition of "trade secret." *See e.g.*, *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *3 (N.D. Cal. Mar. 15, 2018) ("A collection of data that allows the holder to recreate one of Plaintiff's top technologies derives its value from not being generally known, because Plaintiff's competitive edge would evaporate if the public and its competitors could easily recreate its products."); *Posdata Co. v. Kim*, No. C-07-02504 RMW, 2007 WL 1848661, at *7 (N.D. Cal. June 27, 2007) (Plaintiff's Digital Channel Card

Unit processor technology constituted trade secret for purposes of TRO); *Advanced Micro Devices, Inc. v. Feldstein*, No. CV 13-40007-TSH, 2013 WL 10944934, at *8 (D. Mass. May 15, 2013) (technical data regarding engineering details of Plaintiff's products – including microprocessors and related computer components for motherboard chipsets, discrete CPUs and GPUs, and system-on-a-chip integrated packages – "clearly satisfy" definitions of trade secret for TRO); *Apple Inc. v. Rivos, Inc.,* No. 5:22-CV-02637-EJD, 2023 WL 5183034, at *5 (N.D. Cal. Aug. 11, 2023) (Apple's system-on-chip designs and component designs and specifications described trade secrets with sufficient particularity to survive motion to dismiss).

### 2. Roy's Retention of Google's Trade Secret Information in Violation of His Confidentiality Agreement Constitutes Improper Means.

Misappropriation under both the DTSA and TUTSA includes (1) "disclosure or use of a trade secret of another without . . . consent by a person who . . . used improper means to acquire knowledge of the trade secret." Tex. Civ. Prac. & Rem. Code § 134A.002(3); 18 U.S.C. § 1839(5). "Improper means" reflects conduct "which falls below the general accepted standards of commercial morality and reasonable conduct," *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 915 (S.D. Tex. 2015), including the "breach or inducement of a breach of a duty to maintain secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(2); 18 U.S.C. § 1839(6)(A).

Preliminarily, Roy's retention of Google's confidential and trade secret information in violation of his confidentiality agreement, *on its own*, constitutes improper means. *Hybir, Inc. v. Dell Glob., B.V.*, No. 1:22-CV-00472-LY, 2023 WL 1424074, at *6 (W.D. Tex. Jan. 31, 2023), *report and recommendation adopted*, 2023 WL 3035424 (W.D. Tex. Feb. 28, 2023) (breach of a contractual nondisclosure provision by itself constitutes "improper means" under the DTSA and TUTSA).

Further, Roy used improper means to acquire Google's trade secrets when he accessed the information at Google for the purpose of taking hundreds of photographs of documents containing Google's trade secrets with his mobile phone, including information related to Google's SoC, which Roy then stored and retained on his personal devices after his employment was terminated. Singh Decl., ¶ 23. Google did not give Roy permission to take photos of these (or any other) documents or to otherwise retain any of Google's trade secret information after his termination. Roy continues to wrongfully possess Google's trade secret information to this day.

### 3. Roy's Disclosure of Google's Trade Secret Constitutes Use in Violation of TUTSA and DTSA.

Roy's actual disclosure of Google's trade secrets, and his threats and potential to continue to do so, justify the requested injunctive relief. Use of a trade secret for purposes of the TUTSA may be shown by alleging "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the Defendant[.]" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013). Disclosure alone is sufficient for this purpose. 18 U.S.C. § 1839 (definition of "misappropriation"). Under the DTSA, "a plaintiff must [also] allege that its purported trade secrets relate to a product or service within the flow of interstate commerce." *See Providence Title Co. v. Truly Title, Inc*., 547 F. Supp. 3d 585, 597 (E.D. Tex. 2021), *aff'd sub nom. Providence Title Co. v. Fleming*, No. 21-40578, 2023 WL 316138 (5th Cir. Jan. 19, 2023).

Roy has publicly disclosed proprietary and trade secret Pixel-related information, including SoC diagrams, capabilities, architecture roadmaps, configurations, and competitor comparisons on August 20 and 21, October 12 and 16, November 5, and November 15, 2024. Singh Decl.", ¶¶ 15-16, 18-21. Roy's disclosures to date constitute use in violation of both the TUTSA and DTSA. *See e.g.*, *NuScience Corp. v. Henkel*, No. CV 08-2661-GAF (FFMX), 2014 WL 5846754, at *3 (C.D. Cal. Nov. 12, 2014) (granting TRO where Defendants "have threatened to and actually have

disseminated portions of [Plaintiff's] Formula"); *Wells Fargo Bank, N.A. v. Clark*, No. CIV. 11-6248-TC, 2011 WL 3715116, at *2 (D. Or. Aug. 23, 2011) (granting injunctive relief where a former employee posted "hundreds of pages" of plaintiffs' trade secrets and confidential information to the former employee's website).

Roy has threatened to continue to post Google's trade secret information and has suggested that he has more Google information that he will disclose to the public and Google's competitors. Singh Decl., ¶¶ 16, 18-19, Exs. H, J-K Roy has exhibited brazen disregard for his legal obligations and shown that he can and will continue to disclose Google information if not enjoined. *See e.g. TFC Partners, Inc.,* 2019 WL 369152, at *3 (Plaintiff can establish threatened misappropriation where Defendant is "in possession of the information and is in a position to use it").

## C.    Google Has Suffered and Will Continue to Suffer Irreparable Harm if Roy's Wrongful and Unlawful Conduct Is Not Enjoined.

Irreparable harm is harm that "cannot be undone through monetary remedies." *G&G Closed Circuit Events, LLC v. 1) GCF enterprises LLC*, EP-15-CV-00111-KC, 2015 WL 7313427, at *5 (W.D. Tex. Nov. 19, 2015), quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "When a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed." *TFC Partners, Inc.*, 2019 WL 369152, at *4 (enjoining the defendants from using or disclosing the plaintiff's trade secrets and ordering the defendants to return all documents containing the plaintiff's trade secret information) (citation and internal quotation marks omitted).

Here, irreparable harm to Google is apparent and may be presumed (as per *TFC Partners* above) based on Roy's continued possession of Google's trade secrets and unfettered ability and threats to disclose them publicly. Roy's disclosure of some of Google's trade secret information has already been reviewed by third parties and referenced in online publications. Singh Decl., ¶

25. Roy has also flagged many of his posts directly to Qualcomm and Apple, in a flagrant attempt to harm Google by providing its trade secrets to its direct competitors. Singh Decl., ¶¶ 18-21, Exs. J-M XX. Roy's disclosure of this information to the public provides Google's competitors with access to its technical and proprietary information to unfairly compete against Google using its own trade secrets in violation of the DTSA and TUTSA. Singh Decl., ¶¶ 18-19, Exs. J-K.

Critically, despite its best efforts to mitigate the effect of Roy's misconduct, Roy's unlawful posts and the information leaked has remained accessible for days, even weeks, at a time. Singh Decl., ¶ 24. This includes a OneDrive folder he posted in various forms multiple times, which was publicly available for weeks, containing entire presentations related to the Code-Named Project, including diagrams, designs, technical specifications, competitive benchmarking charts, and capabilities related to the next generation SoC. Singh Decl., ¶¶ 22, 24, Ex. N.

Roy's continued possession of these and other trade secrets belonging to Google, together with his history of repeated disclosures on social media and belligerent refusal to cease his behavior, establishes a clear likelihood that Google will continue to suffer harm. Further, Roy has threatened to publish more photos of Google's trade secret information, which he implied he currently possesses. Singh Decl.", ¶¶ 18-19, Exs. J (October 12, 2024, X post where Roy posted photos of the table of contents of an internal Google document and the text "Let's start the series @Google @Qualcomm); Ex. K (October 16, 2024, X post where Roy posts a folder containing Google trade secrets, while tagging @Qualcomm and @Apple, and stating "Let me know if need [sic] more info.").

Finally, under the Confidentiality Agreement, Roy acknowledged and agreed that "it would be impossible to measure and calculate the Company's damages from any breach of [the Confidential Information] Sections" of the Agreement and that, accordingly, the Company "will

have available, in addition to any other right or remedy available, the right to obtain an injunction from a court . . . and to specific performance of any such provision of the Agreement." Singh Decl., ¶ 5, Ex. A, Sec. 6.

The clear and continued harm to Google supports a temporary restraining order.

**D.**     **<u>The Balance of Equities Favors Google.</u>**

In assessing the third factor relevant to granting injunctive relief, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) (citation omitted). An injunction requiring Roy to comply with his existing contractual and related legal obligations to Google will not unduly harm him. *See Kia Am., Inc. v. McAdams*, No. 6:23-CV-00722-ADA-JCM, 2024 WL 4674565, at *5 (W.D. Tex. Oct. 15, 2024) (finding that injunctive relief did not pose any undue hardship on the defendant because it merely required the defendant to comply with his NDA); *see also NRT Texas LLC v. Wilbur*, No. 4:22-CV-02847, 2022 WL 5434332, at *11 (S.D. Tex. Sept. 7, 2022) (finding that the balance of equities favors the plaintiff because precluding individual defendants from disclosing trade secrets would merely require that they meet their obligations to the plaintiff). Roy will not be unduly harmed by the requested injunction because the relief sought is necessary to ensure that Roy complies with his contractual obligations to Google, including by returning and not retaining Google's property and not disclosing Google's trade secret information. Singh Decl.", ¶ 5 Ex. A, Secs. 1-3. Similarly, Roy will not be harmed by an order requiring him to make his personal devices and cloud storage accounts available for forensic examination. Given Roy's propensity for deception and refusal to voluntarily comply with his contractual obligations, only a forensic examination will suffice to confirm that Roy no longer possesses Google's information.

The Court's necessary involvement on Google's behalf is just and proper. Google provided Roy with ample opportunity to resolve and remediate his contractual and legal violations without court intervention. He not only refused but showed a brazen disregard for the obligations he willingly took on as a condition of his employment at Google.

On the other hand, Google faces immediate and irreparable harm to its business operations and competitiveness in the market, substantial loss of customer goodwill, and loss of competitive use and value of Google's confidential information and trade secrets if Roy is not enjoined. Granting the TRO is also equitable in light of Roy's unabashed lack of remorse in his misappropriation of Google's trade secrets. Indeed, in connection with his publication of Google's trade secrets, Roy touted his malintent and willingness to breach his Confidentiality Agreement, including by publicly posting that he would "make [Google] pay", that he "plan[s] to open sourse [sic] [Google's] SOC architecture." Singh Decl.", ¶ 7. He also touted his disregard for the law and his intent to continue to misappropriate Google's trade secrets. Singh Decl., ¶ 10 ("License or copyright are unimportant. A person with know-how knows the work around").

Where, as here, the risk of injury from *not* issuing an injunction would jeopardize Google's competitive benefits obtained through its trade secrets and the corresponding risk of harm to Roy from issuing an injunction is non-existent, the balance of equities favors issuing an injunction. *See e.g.*, *Thoroughbred Ventures, LLC v. Disman*, No. 4:18-CV-00318, 2018 WL 8786664, at *2 (E.D. Tex. May 1, 2018) (economic and competitive harm to Plaintiff outweighed any harm to Defendant through seizure of laptop); *Insight Direct USA, Inc. v. Kelleher*, No. 1:17-CV-252-RP, 2017 WL 1284948, at *3 (W.D. Tex. Apr. 5, 2017) (irreparable harm to Plaintiff's business outweighed harm to Defendant in restraining him from working with Plaintiff's competitors where there was no evidence that Defendant would be "unable to otherwise find employment").

**E.**    <u>**The Public Interest Supports Injunctive Relief**</u>.

Enforcing a defendant's contractual obligations serves the public interest. *Miner, Ltd. v. Anguiano*, 383 F. Supp. 3d 682, 706 (W.D. Tex. 2019) (finding that the grant of an injunction served the public interest merely because the defendants had executed a contract with the plaintiff agreeing to be bound by restrictive covenants). So does preventing employees from using their former employer's trade secrets. *Id.*; *Picker Int'l, Inc. v. Blanton*, 756 F. Supp. 971, 983 (N.D. Tex. 1990) ("The public interest is served by protecting trade secrets."). Here, the requested TRO would ensure that Google's valuable trade secrets are protected and Roy finally complies with the non-disclosure provisions in his Confidentiality Agreement and post-employment obligations to protect Google's trade secrets. Accordingly, the TRO serves the public interest. *See NRT Texas LLC*, 2022 WL 5434332, at *11; *Picker Int'l, Inc.*, 756 F. Supp. at 983; *see also Miner, Ltd.*, 383 F. Supp. 3d at 706.

**IV.**    <u>**CONCLUSION**</u>

Google requests the Court enter a temporary restraining order (1) prohibiting Roy from disclosing or otherwise making available Google trade secrets, on the internet or otherwise; (2) prohibiting any third parties acting in concert with Roy from doing the same; and (3) obtaining the return and removal of its trade secrets from Roy's wrongful possession. In light of the significant potential and actual harm, Google has also filed concurrently with this Application, its Motion for Expedited Discovery and for a Briefing Schedule and Hearing Date for a Motion for Preliminary Injunction. If required, Google is willing and able to post reasonable bond as ordered by the Court, in support of any injunctive order issued by the Court.

Date: November 19, 2024              Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


*/s/ Jason M. Storck*
_____
Jason M. Storck
Texas Bar No. 24037559
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
900 S Capital of Texas Hwy
Las Cimas IV, 5th Floor
Austin, Texas 78746
jstorck@wsgr.com
Telephone:  512-338-5435
Facsimile:  866-974-7329

Matthew D. Gorman
*pro hac vice application forthcoming*
One Boston Place
201 Washington Street, Suite 2000
Boston, MA 02108
mgorman@wsgr.com
Telephone:  212-497-7786
Facsimile:  866-974-7329

***Attorneys for Plaintiffs GOOGLE LLC and
GOOGLE PRIVATE INDIA LIMITED***