**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GOOGLE LLC and** | § | **Civil Action No.** 1:24-cv-1425 |
| **GOOGLE INDIA PRIVATE LIMITED,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | |
| | § | |
| **HARSHIT ROY,** | § | |
| | § | |
| **Defendant.** | | |

**Exhibit A to 11/19/2024 Declaration of Shiviinder Singh**

# Google

## APPENDIX B:

## GOOGLE INDIA PRIVATE LIMITED

## CONFIDENTIAL INFORMATION AND INVENTION ASSIGNMENT AGREEMENT

As a condition of my employment with Google India Private Limited ("Company"), and in consideration of my receipt of confidential information, my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. **Confidential Information**

   (a) <u>Definition of Company Confidential Information</u>. I understand that "Company Confidential Information" means information (including any and all combinations of individual items of information) that the Company has or will develop, acquire, create, compile, discover or own, that has value in or to the Company's business which is not generally known and which the Company wishes to maintain as confidential. Company Confidential Information includes both information disclosed by the Company to me, and information developed or learned by me during the course of my employment with the Company. Company Confidential Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of the Company, whether or not such information is identified as Company Confidential Information. By example, and without limitation, Company Confidential Information includes any and all non-public information that relates to the actual or anticipated business and/or products, research, or development of the Company, or the Company's technical data, trade secrets or know-how, including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with which I may become acquainted during the term of my employment), software, developments, inventions, discoveries, ideas, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company either directly or indirectly in writing, orally or by drawings or inspection of premises, parts, equipment, or other Company property. Notwithstanding the foregoing, Company Confidential Information will not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by the Company to me; (ii) becomes publicly known or made generally available after disclosure by the Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession, without confidentiality obligations, at the time of disclosure by the Company as shown by my then-contemporaneous written records.

   (b) <u>Non-use and Non-disclosure</u>. I agree that during and after my employment with the Company, I will hold in the strictest confidence, and take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information, and I will not (i) use the Company Confidential Information for any purpose whatsoever other than for the benefit of the Company in the course of my employment, or (ii) disclose the Company Confidential Information to any third party without the prior written authorization of the Chief Executive Officer or the Board of Directors of the Company. Prior to disclosure when compelled by applicable law; I will provide prior written notice to the Chief Executive Officer and General Counsel of Google LLC (as applicable). I agree that I obtain no title to any Company Confidential Information, and that as between the Company and me, the Company retains all Company Confidential Information as its sole property. I understand that my unauthorized use or disclosure of Company Confidential Information or violation of any Company policies regarding the protection of Company Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company. I understand that my obligations under this Section 1(b) will continue after termination of my employment.

   (c) <u>Former Employer Information</u>. I agree that I will not, during my employment with the Company, improperly use, disclose, or induce the Company to use any proprietary information or trade secrets

3

of any former or concurrent employer or other person or entity with which I have an obligation to keep in confidence. I further agree that I will not bring onto the premises of the Company or transfer onto the Company's Electronic Media Equipment or Electronic Media Systems (each as defined below) any unpublished document, proprietary information, or trade secrets belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity (except in the case of another Google entity).

(d) Third Party Information. I recognize that the Company has received and in the future will receive from third parties associated with the Company, e.g., the Company's customers, suppliers, licensors, licensees, partners, or collaborators ("Associated Third Parties"), their confidential or proprietary information ("Associated Third Party Confidential Information") subject to a duty on the Company's part to maintain the confidentiality of such Associated Third Party Confidential Information and to use it only for certain limited purposes. By way of example, Associated Third Party Confidential Information may include the habits or practices of Associated Third Parties, the technology of Associated Third Parties, requirements of Associated Third Parties, and information related to the business conducted between the Company and such Associated Third Parties. I agree at all times during my employment with the Company and thereafter, to hold in the strictest confidence, and not to use or to disclose to any person, firm or corporation any Associated Third Party Confidential Information, except as necessary in carrying out my work for the Company consistent with the Company's agreement with such Associated Third Parties. I further agree to comply with any and all Company policies and guidelines that may be adopted from time to time regarding Associated Third Parties and Associated Third Party Confidential Information. I understand that my unauthorized use or disclosure of Associated Third Party Confidential Information during my employment may lead to disciplinary action, up to and including immediate termination and legal action by the Company.

(e) User Data. User Data consists of information directly or indirectly collected by Google from users of its services. User Data includes individual log files related to any user session or use of Google services or log files in the aggregate. User Data also includes personally identifiable information, which is information that can be directly associated with a specific person or entity, such as a name, address, telephone number, e-mail address, or information about activities that can be directly linked to a user, such as an IP address or cookie information. I agree to treat User Data as Company Confidential Information under this Agreement and to access, use and disclose User Data only as authorized by and in accordance with this Agreement and Company policies.

2. **Inventions**

(a) Assignment of Inventions. As between the Company and myself, I agree that all right, title, and interest in and to any and all copyrightable material, notes, records, drawings, designs, inventions, improvements, developments, discoveries, ideas, concepts, trademarks, and trade secrets, whether or not patentable or registrable under patent, copyright or similar laws, conceived, discovered, authored, invented, developed or reduced to practice by me, solely or in collaboration with others, during the period of time I am in the employ of the Company (including during my off-duty hours), or with the use of the Company's equipment, supplies, facilities, or Company Confidential Information, and any copyrights, patents, trade secrets, mask work rights or other intellectual property rights relating to the foregoing, except as provided in Section 2(e) below (collectively, "Inventions"), are the sole property of the Company. I also agree to promptly make full written disclosure to the Company of any Inventions and to deliver to the Company or its designee all of my right, title and interest in and to the Inventions. I also hereby irrevocably assign fully to the Company or its designee all of my right, title and interest in and to Inventions, except as prohibited by the laws of India and as otherwise set forth in Section 2(e) below. Notwithstanding the provisions of Section 19(4) of the Copyright Act, 1957, I agree that such assignment in so far as it relates to copyrightable material shall not lapse nor the rights transferred therein revert to me, even if the Company does not exercise the rights under the assignment within a period of one year from the date of assignment. I further acknowledge and agree that I shall waive

DocuSign Envelope ID: E0AD9631-4AB7-40EE-A507-BCF5390549D4



any right to and shall not raise any objection or claims to the Copyright Board with respect to the assignment, pursuant to Section 19A of the Copyright Act, 1957. I further acknowledge that all original works of authorship that are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and that are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act and Indian Copyright Act, 1957. I understand and agree that the decision whether or not to commercialize or market any Inventions is within the Company's sole discretion and for the Company's sole benefit, and that no royalty or other consideration will be due to me as a result of the Company's efforts to commercialize or market any such Inventions.

(b) <u>Pre-Existing Materials</u>. I will not incorporate any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by me or in which I have an interest prior to, or separate from, my employment with the Company ("Prior Inventions") into any Invention or otherwise utilize any such Prior Invention in the course of my employment with the Company. If I incorporate any such material owned by me or in which I have any interest prior to, or separate from, my employment with the Company, I hereby grant to Google LLC a nonexclusive, royalty-free, fully-paid, irrevocable, perpetual, transferable worldwide license (with the right to grant and authorize sublicenses) to make, have made, use, import, offer for sale, sell, reproduce, distribute, modify, adapt, prepare derivative works of, display, perform, and otherwise exploit such Prior Inventions, without restriction, including, without limitation, as part of or in connection with such Invention, and to practice any method related thereto. I will not incorporate any inventions, discoveries, ideas, original works of authorship, developments, improvements, trade secrets and other proprietary information or intellectual property rights owned by any third party into any Invention or otherwise utilize any such Prior Invention in the course of my employment with the Company without Google LLC's prior written permission. I have attached hereto as <u>Exhibit A</u>, a list describing all Prior Inventions or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. Furthermore, I represent and warrant that if any Prior Inventions are included on <u>Exhibit A</u>, they will not materially affect my ability to perform all obligations under this Agreement.

(c) <u>Maintenance of Records</u>. I agree to keep and maintain adequate, current, accurate, and authentic written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, electronic files, reports, or any other format that may be specified by the Company. The records are and will be available to and remain the sole property of the Company at all times.

(d) <u>Patent and Copyright Registrations</u>. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company will deem proper or necessary in order to apply for, register, obtain, maintain, defend, and enforce such rights and in order to deliver, assign and convey to the Company, its successors, assigns, and nominees the sole and exclusive rights, title and interest in and to such Inventions, and testifying in a suit or other proceeding relating to such Inventions and any rights relating thereto. I further agree that my obligations under this Section 2(d) will continue after the termination of this Agreement. If the Company is unable because of my unavailability, mental or physical incapacity or for any other reason to secure my signature with respect to any Inventions including, without limitation, to apply for or to pursue any application for any United States or foreign patents or mask work or copyright registrations covering such Inventions assigned to the Company or its designee in Section 2(a), then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf and stead to execute and file any papers, oaths and to do all other lawfully permitted acts with respect to such Inventions to further the prosecution and issuance of patents, copyright and mask work registrations with the same legal force and effect as if executed by me. This power of attorney will be considered coupled with an interest, and will be

irrevocable.

(e) Exception to Assignments. I understand that the provisions of this Agreement requiring disclosure and assignment of Inventions to the Company do not apply to any invention that I have developed entirely on my own time without using any of the Company's property (including, but not limited, to the Company's Electronic Media Systems), equipment (including, but not limited, to the Company's Electronic Media Equipment), supplies, facilities, trade secret information or Company Confidential Information, except for those inventions that either (i) relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company or (ii) result from any work or services that I performed for the Company. I will advise the Company promptly in writing of any inventions that I believe meet the foregoing criteria and not otherwise disclosed on Exhibit A for an ownership determination in confidence.

3. **Return of Company Materials**

(a) Definition of Electronic Media Equipment and Electronic Media Systems. I understand that "Electronic Media Equipment" includes, but is not limited to, computers, external storage devices, thumb drives, handheld electronic devices, telephone equipment, and other electronic media devices. I understand that "Electronic Media Systems" includes, but is not limited to, computer servers, messaging and email systems or accounts, and web-based services (including cloud-based information storage accounts), whether provided for my use directly by the company or by third-party providers on behalf of the Company.

(b) Return of Company Property. I understand that anything that I created or worked on for the Company while working for the Company belongs solely to the Company and that I cannot remove, retain, or use such information without the Company's express written permission. Accordingly, upon separation from employment with the Company or upon the Company's request at any other time, I will immediately deliver to the Company and will not keep in my possession, recreate, or deliver to anyone else, any and all Company property, including, but not limited to, Company Confidential Information, Associated Third Party Confidential Information, all Company equipment including all Company Electronic Media Equipment, all tangible embodiments of the Inventions, all electronically stored information and passwords to access such property, Company credit cards, records, data, notes, notebooks, reports, files, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, photographs, charts, any other documents and property, and reproductions of any of the foregoing items, including, without limitation, those records maintained pursuant to Section 2(c).

(c) Return of Company Information on Company Electronic Media Equipment. In connection with my obligation to return information to the Company, I agree that I will not copy, delete, or alter any information, including personal information voluntarily created or stored, contained upon my Company Electronic Media Equipment before I return the information to the Company.

(d) Return of Company Information on Personal Electronic Media Equipment. In addition, if I have used any personal Electronic Media Equipment or personal Electronic Media Systems to create, receive, store, review, prepare or transmit any Company information, including but not limited to, Company Confidential Information, I agree to make a prompt and reasonable search for such information in good faith, including reviewing any personal Electronic Media Equipment or personal Electronic Media Systems to locate such information and if I locate such information I agree to notify the Company of that fact and then provide the Company with a computer-useable copy of all such Company information from those equipment and systems; and I agree to cooperate reasonably with the Company to verify that the necessary copying is completed, and, upon confirmation of compliance by the Company, I agree to delete and expunge all Company information.

(e) Compliance. I understand and agree that I have no reasonable expectation of privacy in any property, including, but not limited to, documents, Electronic Media Equipment or Electronic Media Systems, that is used to conduct the business of the Company. As such, I also understand and agree that the

Company has the right to audit and search all such property, without further notice to me, to ensure that the Company is licensed to use the software on the Company's property in compliance with the Company's software licensing policies, to ensure compliance with the Company's policies and for any other business-related purposes in the Company's sole discretion. I understand that I am not permitted to add any unlicensed, unauthorized or non-compliant applications to any Company property, including, but not limited to, Company Electronic Media Equipment or Company Electronic Media Systems, and that I will refrain from copying unlicensed software onto such Company property or using non-licensed software or web sites. I understand that it is my responsibility to comply with the Company's policies governing use of the Company's documents, Electronic Media Equipment and Electronic Media Systems to which I will have access in connection with my employment.

4. **Notifications Post Termination**

   In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new employer about my obligations under this Agreement. I also agree to keep the Company advised of my home and business address for a period of one (1) year after termination of my employment with the Company, so that the Company can contact me regarding my continuing obligations provided by this Agreement.

5. **Code of Conduct**

   I acknowledge that I have read the Company's Code of Conduct, which is available on the Company's public website under "Investor Relations". I agree to adhere to the terms of the Code of Conduct, as amended from time to time, and to report any violations of the Code.

6. **Injunctive Relief**

   I agree that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Sections 1 and 2 herein. Accordingly, I agree that if I breach any of such Sections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of the Agreement.

7. **General Provisions**

   (a) Governing Law; Venue. This Agreement shall be deemed to be a contract made under, and shall be governed and construed in accordance with, the laws of India. I hereby expressly consent to the jurisdiction of the courts of India and waive any objection to said venue.

   (b) Entire Agreement. This Agreement, together with its Exhibits, and my employment contract from the Company set forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior discussions or representations between us including, but not limited to, any representations made during my interview(s) or relocation negotiations, whether written or oral. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by an authorized signatory of the Company and me. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

   (c) Severability. If one or more of the provisions in this Agreement are deemed void by law, then the remaining provisions will continue in full force and effect.

   (d) Successors and Assigns. This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

   (e) Waiver. Waiver by the Company of a breach of any provision of this Agreement will not operate as a waiver of any other or subsequent breach.

# Google

(f) <u>Survivorship</u>. The rights and obligations of the parties to this Agreement will survive termination of my employment with the Company.

Signature of Employee: *Harshit Roy* (DocuSigned by: 69EF08939763455)

Name of Employee: HARSHIT ROY

Date: July 3, 2020

8